# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Melissa Maldonado, Hollie Lord, and | ) | |
| Linda Hartsell, | ) | |
| individually under Illinois Wage Laws, | ) | |
| individually under the Fair Labor Standards | ) | |
| Act and as the Collective Representative | ) | |
| under the Fair Labor Standards Act in a | ) | |
| Collective Action, | ) | |
| | ) | No. 12 C 4087 |
| Plaintiffs, | ) | |
| | ) | Judge Sara L. Ellis |
| v. | ) | |
| | ) | |
| Golren Enterprises Inc., | ) | |
| d/b/a Corfu Restaurant, and | ) | |
| Michele Golegos, John Golegos, and | ) | |
| George Alimisis, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This suit was brought by Plaintiffs Melissa Maldonado, Hollie Lord, and Lina Hartsell, former waitresses at the Corfu restaurant ("Corfu") against Defendants, Corfu's owners and operators. Before the Court are Plaintiffs' [118] and Defendants' [88] motions for partial summary judgment as well as Defendants' motions to strike Plaintiffs' Rule 56.1 statements of undisputed material facts [126, 130]. The Court grants Defendants' motion for summary judgment as it relates to Plaintiff Melissa Maldonado's claim for relief under Title VII. Ms. Maldonado is not entitled to this relief as a matter of law because she has neither alleged nor offered any evidence to support that she was discriminated against as a result of her gender. The Court denies both parties' motions for summary judgment as they relate to the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL") claims. Whether Plaintiffs received all tips to which they were entitled is a disputed issue of material fact, as is the issue

regarding whether Plaintiffs were properly compensated for work they performed before the start of their shifts. Because these issues underlie the FLSA and IMWL claims, these claims are not suitable for summary judgment.

## BACKGROUND[1]

Plaintiffs Melissa Maldonado, Hollie Lord, and Linda Hartsell worked as waitresses at Corfu in St. Charles, Illinois, which Defendants John Golegos, Michele Golegos, and George Alimisis own and/or operate. For their work, Plaintiffs received tips and an hourly salary of approximately $4.95. Corfu maintains a tip pool that requires servers to contribute 10% of their tips to the busboys. Corfu's stated policy is that only waitresses contribute to the tip pool and only busboys receive funds from the pool. During at least 2010 and 2011, Corfu's management maintained a tip pool log. Every week, each server wrote on the log the amount of tips she contributed to the busboys that week.

At all relevant times, Corfu customers paid for their meals at a central cash register, using either cash or a credit card. Some customers who paid in cash would leave tips at the register, while others would return cash tips to their table. Customers who paid with a credit card had the customary option of adding a tip on the credit card receipt. Therefore, Plaintiffs relied on Corfu's hosts and managers to pass along many of their tips. The receipts, which were stored in a pile near the cash register, did not include any information to identify the customer's table number or waitress. As a result, when a customer paid and tipped using a credit card, the server

---

[1] The facts in the background section are taken from the parties' Local Rule 56.1 statement of facts and from the evidentiary support filed by each party on the record. Plaintiffs' Local Rule 56.1 statements of fact left much to be desired in terms of clarity. Defendants have moved to strike more than 40 of Plaintiffs' statements of fact. Defendants' motions to strike [126, 130] are granted in part and denied in part. In accordance with its regular practice, the Court has considered the parties' specific objections and responses and has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to the resolution of these motions.

generally did not know the amount of the tip the customer had left. Plaintiffs assert that even when they attempted to identify the amount of a credit card tip by looking through the receipts, they were unable to identify which receipts corresponded to their section unless they knew the customer's name or some other identifying information.

Each day, Corfu's host recorded on a piece of paper the dollar value of the credit card tips each waitress received. Two or three times each week, Defendants used the daily tip sheets to calculate each waitress' total tips for that period. Defendants kept the daily tip sheets for approximately ten days or two weeks, after which time they would discard the sheets. Plaintiffs assert that in calculating their tips, Defendant John Golegos rounded their tips down to the nearest whole dollar. Plaintiffs state that, for example, if a waitress' tips totaled $30.75, Mr. Golegos would only give the waitress $30. Plaintiffs state that Mr. Golegos did this throughout their employment at Corfu, but offer no specifics with regard to any particular instance that they were short-changed. Defendants deny that Plaintiffs ever received less than all of the tips they had earned. In addition to their own testimony, Defendants submit affidavits of nine waitresses who state that Mr. Golegos never failed to pay them their entire tips.

Teddy Mack occasionally manned Corfu's central cash register. Plaintiffs refer to Mr. Mack as Corfu's "night manager." Defendant John Golegos testified that Mr. Mack is his cousin and that he served as Corfu's host whenever he wanted to work. Mr. Golegos further states that the restaurant did not pay Mr. Mack for his work.

Ms. Maldonado testified that she personally witnessed Mr. Mack stealing credit card tips that customers had given to her. Additionally, Plaintiffs state that sometimes when Mr. Mack worked the register they would receive no tip from multiple tables in a given shift. According to Plaintiffs, searching through the credit card receipts proved fruitless because they could not

identify which receipts corresponded to their tables. Ms. Hartsell testified that on at least one occasion, Mr. Mack refused to let her inspect the credit card receipts. But again, Plaintiffs cannot identify the date, time, amount of the tip, customer's name, or any other details of any instance in which Mr. Mack allegedly stole their tips.

Plaintiffs complained to Defendant Michele Golegos about Mr. Mack. Mrs. Golegos informed her husband of the complaints, but she did not identify to her husband the waitresses who had complained. Mr. Golegos investigated these complaints by asking some waitresses, but not Plaintiffs, whether Mr. Mack had stolen their tips. The waitresses responded that they did not work with Mr. Mack or that he had not taken their tips. On the basis of these responses and the nine corroborating affidavits from Corfu waitresses, Defendants deny that Mr. Mack ever misappropriated any waitress' tips.

Plaintiff Melissa Maldonado worked at Corfu from approximately 1999 until November of 2011. In 2009, Ms. Maldonado began dating Ari Golegos, an occasional host at Corfu and the son of Defendants John and Michele Golegos. In September of 2010, Ms. Maldonado and Ari Golegos became engaged to be married. The two shared a townhouse in the town of Bartlett, Illinois. The engagement ended one year later. After the break-up, Ari left the townhouse and stayed with his mother. Ms. Maldonado alleges that after her break-up with Ari, Mrs. Golegos excessively nit-picked her work and that Mrs. Golegos and Corfu's other hosts disproportionately sat problematic customers in her section. Ms. Maldonado also states that Mrs. Golegos encouraged customers to ask Ms. Maldonado about her personal life. Defendants respond by pointing to the affidavits of nine Corfu waitresses, who state that following the break-up, Ms. Maldonado was not treated any differently from other wait staff.

On or about November 15, 2011, while at Corfu during business hours, Ms. Maldonado and Mrs. Golegos had an argument that culminated in Mrs. Golegos firing Ms. Maldonado. The parties offer differing versions of the event. Ms. Maldonado testified that Mrs. Golegos began the confrontation by following Ms. Maldonado around the restaurant as she performed her work, repeatedly asking, "What are we going to do about the townhouse?" and telling her "You can't stay there." Ms. Maldonado testified that she asked Mrs. Golegos to leave her alone and told her that the topic should not be discussed in the restaurant because it had nothing to do with work. Defendants assert that the confrontation began when Ms. Maldonado confronted Mrs. Golegos, accusing her of stealing Ms. Maldonado's engagement ring from the townhouse that Ms. Maldonado and Ari Golegos shared. Defendants assert that Ms. Maldonado marched up and down the aisles of the restaurant, growing heated in front of customers. Mrs. Golegos testified that Ms. Maldonado said to her, "You are not my boss. You are nothing." At the end of this confrontation, Mrs. Golegos fired Ms. Maldonado. Ms. Maldonado denies that she yelled in the restaurant, and asserts that even if she did, other waitresses were not fired after having outbursts in the restaurant.

Plaintiff Linda Hartsell worked as a waitress at Corfu for approximately six months from September 2009 until March or April of 2010. Ms. Hartsell states that she suspected Mr. Mack of stealing her tips because she sometimes received no tips from multiple tables in a shift when Mr. Mack worked as a host. Ms. Hartsell further states that she confronted Mr. Mack about this on at least two occasions and that Mr. Mack denied that she was owed any tips. Ms. Hartsell testified that she asked Mr. Mack to see the charge slips in order to determine whether he had stolen any of her tips, but that Mr. Mack refused. Ms. Hartsell asserts that she spoke to Mr. Golegos about Mr. Mack stealing her tips, but that immediately after this conversation, her hours

were significantly reduced and she was eventually told that she was no longer needed because "business was slow." Ms. Hartsell believes that she was terminated from Corfu because she complained about Mr. Mack stealing her tips.

Plaintiff Hollie Lord worked as a waitress at Corfu for approximately 18 years, concluding in March of 2011. Ms. Lord states in her affidavit that Mr. Golegos and Mr. Mack stole her tips. She asserts that Mr. Mack shorted her tips by rounding down any amount less than a dollar and that Mr. Mack pocketed entire tips that had been left for her on credit cards.

Plaintiffs also submit the affidavit of Sue James, who is not a party to this suit, but who worked as a waitress at Corfu for approximately 7 years, concluding around 2007. Ms. James states that she personally witnessed Corfu's owners and hosts stealing and short-changing tips that she and other waitresses were entitled to receive.

Corfu's servers were required to sign-in at the start of each shift and sign-out upon the shift's conclusion. Plaintiffs allege that Corfu maintained a policy of requiring its wait staff to arrive prior to the start of their shifts. Ms. Maldonado testified that she arrived 30 minutes early when she opened the restaurant and 15 minutes early when she relieved another waitress. She further testified that during this time she performed work for Corfu's benefit, including making sure tables were orderly and appropriately stocked with condiments, setting up the salad bar, and cutting lemons. Ms. Maldonado was not paid for time spent working before the start of her shift. Ms. Maldonado states that early in her tenure at Corfu, she wrote her actual arrival time on the sign-in sheet, but that Mr. Golegos scratched this out and instead wrote in the start time of Ms. Maldonado's shift. Defendants testify that Ms. Maldonado and other wait staff performed minimal work before their shifts began, and that they often chatted amongst each other, drank

coffee, or ate salads rather than working. Mrs. Golegos also testified that she paid the employees for whatever time they entered on the time sheet.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When confronted with cross-motions for summary judgment, the Court is not required to grant judgment as a matter of law for one side or the other. *Barbara Z. v. Obradovich*, 937 F. Supp. 710, 716 (N.D. Ill. 1996). Each cross-movant must individually satisfy the stringent requirements necessary to obtain summary judgment under Rule 56, as such standards are still applicable. *McMasters v. United States*, No. 98 C 6413, 2000 WL 336549, at *2 (N.D. Ill. Mar. 28, 2000), *aff'd,* 260 F.3d 814 (7th Cir. 2001). On cross-motions for summary judgment, the

Court must consider the burden of proof that each party would bear on each issue at trial and assess the motions in light of that burden. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## ANALYSIS

Before the Court are cross-motions for partial summary judgment. Plaintiffs seek summary judgment on Counts I, II, and III of the amended complaint. In Count I, Ms. Maldonado claims that she was discriminated against in violation of Title VII of the Civil Rights Act. Counts II and III assert that Plaintiffs did not receive adequate compensation under the FLSA and the IMWL. Counts II and III can be divided into tip claims and off-the-clock work claims. In these claims, Plaintiffs allege (a) that Mr. Golegos and Mr. Mack stole Plaintiffs' tips, (b) that Corfu's tip pool violated labor laws because Defendants did not actually provide pooled tips to the busboys, and (c) that Defendants failed to compensate Plaintiffs for work performed before Plaintiffs' shifts began. Defendants seek summary judgment on Ms. Maldonado's Title VII claim as well as Plaintiffs' claims that Mr. Golegos and Mr. Mack stole their tips and retained pooled tips for themselves. Defendants do not seek summary judgment on Plaintiffs' claims for off-the-clock work. Nor do Defendants apparently move for summary judgment on Count III's tip claims as they relate to Plaintiffs other than Ms. Maldonado. Finally, neither party seeks summary judgment with regard to Ms. Hartsell's FLSA claim for retaliatory termination.

## I. Ms. Maldonado's Gender Discrimination Claim

Defendants seek summary judgment on Count I, Ms. Maldonado's claim that she was subject to gender discrimination. In this count, Ms. Maldonado contends that she was treated differently than her similarly situated colleagues as a result of ending her consensual sexual

8

relationship with Ari Golegos. Ms. Maldonado asserts that this differential treatment culminated in her termination from Corfu.

Defendants argue that Ms. Maldonado's Title VII claim must fail because she cannot prove that she suffered differential treatment and that Defendants had a valid, non-pretextual reason to terminate her employment. Ms. Maldonado responds to Defendants' motion by citing her own testimony that she was treated differently than other similarly situated employees. Maldonado identifies disputed questions of fact related to this claim, including whether her behavior warranted dismissal or whether she yelled at Mrs. Golegos during their argument on November 15, 2011.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. An employee alleging sex discrimination under Title VII can proceed by presenting direct or indirect evidence of discriminatory intent. "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). The indirect method sets out a three-step process. Ms. Maldonado must first make a *prima facie* case of discrimination. Defendants can defeat her case by offering a non-discriminatory reason for their action. However, Ms. Maldonado can overcome this second step by demonstrating that Defendants' explanation is pretext. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Although the burden of production shifts to Defendant during the second step of this analysis, Ms. Maldonado bears the burden of persuasion at all times. *Id.* at 508. To establish a *prima facie* case, Ms. Maldonado must demonstrate that: (1) she is a member of a protected

class, (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) at least one similarly situated employee who was not a member of her protected class was treated more favorably. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004).

Here, because Ms. Maldonado has not offered any evidence that her alleged mistreatment was driven by her gender, she must proceed with indirect evidence. But Ms. Maldonado cannot prevail on the indirect method because she has not established a *prima facie* case. Maldonado seems to assume that her protected class is determined by her relationship with Ari Golegos. But courts in this Circuit have rejected this definition. Ms. Maldonado's protected class is determined by her gender, not her sexual relationship. *Blozis v. Mike Raisor Ford, Inc.*, 896 F. Supp. 805, 807 (N.D. Ind. 1995); *O'Patka v. Menasha Corp.*, 878 F. Supp. 1202, 1206 (E.D. Wis. 1995) ("'Sex' discrimination means discrimination based on gender, not upon sexual activity or relationships."); *Piech v. Arthur Andersen & Co., S.C.*, 841 F. Supp. 825, 829 (N.D. Ill. 1994) (citing *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306–07 (2d Cir. 1986)). Therefore, to make a *prima facie* case, Ms. Maldonado must demonstrate that a similarly situated male employee was treated more favorably than she. She has not offered any evidence in this regard. Instead, she contends that other female waitresses were allowed to yell inside the restaurant without being fired. This is not relevant to Ms. Maldonado's Title VII claim because Corfu's female waitresses are within the same protected class as Ms. Maldonado. Because Ms. Maldonado cannot demonstrate that similarly situated male employees were treated differently than she was treated, she has not satisfied her burden under Title VII.

Moreover, courts in this district bar plaintiffs from bringing Title VII sex discrimination claims "where the conduct at issue stems solely from the harasser's animosity arising from a

failed romantic relationship." *Kaminski v. Freight-A-Ranger, Inc.*, No. 01 C 4937, 2002 WL 31174461, at *3 (N.D. Ill. Sept. 30, 2002). When a claim is based on vindictiveness in response to a failed consensual relationship, the Court presumes that any differential treatment resulted from the failed relationship, not the plaintiff's gender. *Keppler v. Hinsdale Twp. High Sch. Dist. 86*, 715 F. Supp. 862, 869 (N.D. Ill. 1989). Again, Ms. Maldonado has not offered any evidence that her employer discriminated against her because she is a woman, rather she claims that the discrimination stems from her failed relationship with Ari Golegos. This contention torpedoes her Title VII claim. In *Keppler*, the court granted summary judgment in favor of the defendant even after finding that the defendant "embarked on a campaign to denigrate [the plaintiff] in the eyes of [their employer], with the ultimate goal of having her removed from her administrative position." *Id*. The court's ruling was based on finding that the defendant's conduct was not motivated by animus toward the plaintiff because she was a woman, but because of their failed relationship. *Id*. By Ms. Maldonado's own admission, any mistreatment she suffered was motivated not by sexism, but by resentment in response to her failed engagement to Ari Golegos. Therefore, Ms. Maldonado has not made out a *prima facie* case of gender discrimination under Title VII. Accordingly, the Court grants Defendants' motion for summary judgment on Count I.

## II.    Tip Claims

In Counts II and III, Plaintiffs seek relief under the IMWL and the FLSA. Both the IMWL and the FLSA create a "tip credit." The tip credit allows employers to pay less than the state and federal minimum wage to employees who receive gratuities as a customary part of their pay. 820 Ill. Comp. Stat. § 105/4(a)(1)(c). The IMWL and the FLSA are generally understood to be co-extensive in this regard. *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993). There are two requirements to qualify for the tip credit: that the employer informs the employee

of the minimum wage rules, and that the employee retains all tips received.  This second requirement is at issue here.  Employees may institute a tip pool without violating the second requirement, as long as employers or managers do not receive funds from the pool.  *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 652 (N.D. Ill. 2007).

Plaintiffs claim that Defendants violated the tip credit provision by retaining some of Plaintiffs' tips for themselves.  Plaintiffs claim that Defendants took their tips in two ways: (a) by intercepting some portion of Plaintiffs' tips before Plaintiffs ever received them, and (b) by keeping Plaintiffs' tip pool contributions for themselves rather than distributing them to the busboys.  Plaintiffs seek back pay equal to the difference between the $4.95 per hour that they were paid and the state or federal minimum wage.  Plaintiffs also seek restitution of all funds contributed into the tip pool.  Count II raises a claim under the IMWL, while Count III states a collective action under the FLSA.[2]

Defendants bear the burden of proving that they are eligible to receive the tip credit under the IMWL, as the IMWL expressly defines the tip credit as an exemption to the minimum wage.  *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1027–28 (N.D. Ill. 2012) (citing Ill. Comp. Stat. § 105/4(c)).  When elements "can fairly be characterized as affirmative defenses or exemptions," the defendant bears the burden of persuasion.  *Schaffer v. Weast,* 546 U.S. 49, 57, 126 S. Ct. 528, 163 L.Ed.2d 387 (2005).

However, under the FLSA, the tip credit is an exclusion from the minimum wage, rather than an exemption; therefore, the burden lies with the plaintiff.  *Driver*, 890 F. Supp. 2d at 1027 (citing *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 595 (7th Cir. 2012)); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 882 (8th Cir. 2011).  Under the FLSA, Plaintiffs must initially demonstrate

---

[2] Counts II and III also allege that Plaintiffs were not paid for off-the-clock work, but the Court addresses that issue in Section III below.

that they did not receive all tips to which they were entitled. Plaintiffs may meet this initial

burden on their own testimony alone, without supporting documentation. *Dominguez v.*

*Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 815 (N.D. Ill. 2011). Once over this hurdle, the

burden shifts onto Defendants to produce evidence rebutting Plaintiffs' testimony. *Id.* at 812–13

(quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed.

1515 (1946)); *see also Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir.

2008).

Here, Defendants kept a daily log of the amount of tips to which Plaintiffs were entitled,

but they have long since discarded those sheets and any record of their contents. Therefore, with

regard to the FLSA claims, the burden shifts to Defendants once Plaintiffs testify that they did

not receive the tips to which they were entitled. *See Dominguez*, 790 F. Supp. 2d at 815.

Defendants even acknowledge that they bear the burden of persuasion under both the FLSA and

IMWL. Doc. 134 at 8 ("Defendants have met their burden of proof as to full compliance with

FLSA/IMWL").

## A.    Theft of Tips

Plaintiffs assert that Mr. Mack and Mr. Golegos intercepted many of their tips before

Plaintiffs ever received the tips from customers. As a result, Plaintiffs contend that Corfu is

ineligible to take the tip credit and must instead pay its wait staff the full state minimum wage.

Plaintiffs support these claims with their own affidavits, the affidavit of Sue James, and the

deposition testimony of Melissa Maldonado. Plaintiffs and Ms. James all state that they

witnessed Mr. Mack and Mr. Golegos steal their tips. Ms. Maldonado testifies that she

personally witnessed Mr. Mack stealing tips that had been left for her on a credit card. Plaintiffs

also testify that one can infer that Mr. Mack stole their tips because on days when Mr. Mack

served as the cashier at Corfu—collecting tips from many of Plaintiffs' customers—Plaintiffs would receive no tips from multiple tables.

Defendants flatly deny that Mr. Mack or Mr. Golegos ever stole any waitress' tips. In support, Defendants offer nine virtually identical affidavits of Corfu waitresses who uniformly state, "I have never been denied even the slightest portion of my tips while working at the Corfu Restaurant." Mr. Golegos similarly testified that when he inquired with Corfu's waitresses about Mr. Mack, none of the waitresses corroborated Plaintiffs' claims. Defendants also point out that Plaintiffs could not identify any details regarding the theft of their tips. Moreover, Ms. Maldonado testified that she never saw Mr. Mack steal any of her tips directly from any of the tables.

The Court finds that summary judgment is not appropriate because the parties dispute the fundamental question of fact underlying these claims. The Court is presented with directly conflicting testimony by Plaintiffs and Defendants as to whether Mr. Golegos or Mr. Mack ever stole Plaintiffs' tips. Both parties submit corroborating statements from non-party witnesses, and neither side supports any of its testimonial evidence with any documents. Therefore, the question before the Court is simply one of credibility. Summary judgment is not appropriate where the ultimate decision hinges on a determination of credibility. *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990). Therefore, the Court denies both parties' motions for summary judgment on the issue of whether Mr. Mack or Mr. Golegos stole Plaintiffs' tips.

### B.      Tainting the Tip Pool

Plaintiffs also assert that Defendants violated the FLSA and IMWL by failing to distribute pooled tips to the busboys. Plaintiffs assert, somewhat obliquely, that the tip pool did not comply with the FLSA or IMWL because Defendants retained some or all of the pooled

funds for their own purposes. Tip pools do not violate the FLSA unless employers and managers receive funds from the pool. *Morgan*, 625 F. Supp. 2d at 652. Without weighing in on the question here, the Court notes that the Sixth Circuit has held that a restaurant's host may validly participate in a tip pool. *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 302 (6th Cir. 1998).

Unlike the allegations that Defendants stole or otherwise short-changed Plaintiffs' tips, Plaintiffs do not offer admissible evidence to support the allegation that Defendants retained any money from the tip pool. Conflating the two issues, Ms. Maldonado's affidavit states, "[t]he Defendant failed to follow Tip Pool Requirements, by retaining portions of the tip pool without my consent or even knowledge. This occurred because Defendants would regularly short the total tips I was to receive." Ms. Maldonado fails to recognize the distinction between whether she initially received the tips to which she was entitled and whether the tips that she contributed to the tip pool were actually distributed to the busboys. After receiving their tips, Corfu waitresses were required to pay 10% of their tips into a tip pool, to be divided among the busboys. The parties agree that Plaintiffs were not entitled to receive any funds from the pool. Therefore, it is nonsensical to say that Defendants violated the requirements of the tip pool by giving Ms. Maldonado less than she was entitled to receive. The only direct evidence Plaintiffs offer on this point is found in Ms. Hartsell's affidavit. She recounts an interaction with a busboy who stated that he did not receive any cash tips from the tip pool. But the Court cannot consider this statement because it is inadmissible hearsay.

However, Defendants' deposition testimony is not clear on this issue. Mr. Golegos initially testified that he pays out the busboys on the tip amounts. But Mr. Golegos also testified that he pays the busboys $130 every week and that this amount does not vary. The Court would

expect that if the busboys were actually receiving tips from the tip pool that their pay would vary with the pace of business. Mrs. Golegos also implies in her deposition that the only payment Corfu's busboys receive are their paychecks. Defendants' affidavits do not shed any light on whether the busboys actually received tips from the pool.

Therefore, the Court finds that there is a genuine issue of material fact regarding whether Defendants actually paid out tip pool funds to busboys or retained these funds for themselves. Defendants, after acknowledging that they bear the burden of persuasion with regard to their entitlement to the tip credit, offer inconsistent testimony on the question of whether they retained any tip pool funds for themselves. Plaintiffs therefore survive Defendants' motion for summary judgment on the strength of specific factual inconsistencies in the Defendants' testimony. *See Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989). Because the record reflects a factual dispute regarding whether Defendants actually paid all tip pool collections to the busboys, the Court denies both parties' motions for summary judgment on this claim.

## III.     Off-the-Clock Work Claim

Plaintiffs also move for summary judgment on their claim for unpaid wages. Defendants have not themselves moved for summary judgment on this claim. While Defendants raise this issue in their reply brief, the Court finds that the argument is waived for the purposes of Defendants' own motion. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010); *Drew v. Ramos*, No. 11-CV-2938, 2013 WL 5212343, at *9 (N.D. Ill. Sept. 17, 2013) ("It is well-established that arguments raised for the first time in a reply brief are waived."). However, the Court will consider the arguments in Defendants' reply brief as arguments in response to

Plaintiffs' motion for summary judgment. Because the issue hinges on disputed questions of material fact, the Court denies Plaintiffs' motion as it relates to off-the-clock wage claim.

Both parties rely on *Dominguez*, where the court denied cross-motions for summary judgment on the issue of whether the defendant, an Irish pub, failed to properly compensate the plaintiffs' for their time. *Dominguez*, 790 F. Supp. 2d. at 812–18. When considering this question, *Dominguez* utilized the burden-shifting approach described above, wherein the plaintiff must demonstrate that he performed work for which he was not compensated, and then the defendant bears the burden of producing evidence to rebut this claim. *Id.* at 812. The court in *Dominguez* ultimately concluded that even though defendants improperly reduced the hours from what plaintiffs had recorded in the time log 163 times, it could not grant summary judgment in favor of plaintiffs because they never complained about the practice. *Id.* at 818.

Plaintiffs assert that they were required to arrive before each shift began, but that they were not paid for their work. Ms. Maldonado testified that when she began working at Corfu she was ordered to arrive 15 minutes before her start time and that no one ever told her differently. Ms. Maldonado further states that she actually arrived 15 or 30 minutes before her shift began and performed work such as filling condiments, organizing tables, cutting lemons, serving coffee, and setting up the salad bar. Ms. Maldonado further testified that she was not paid for any of this pre-shift work and that when she attempted to record her actual arrival time on the time sheet, Mr. Golegos crossed it out and replaced it with the time her shift was scheduled to start.

Defendants counter with four arguments. First, they contend that although the policy was in place years ago, it is no longer enforced. Second, Defendants contend that the amended complaint limits Plaintiffs' claims for off-the-clock work to the claims for improper tip pool

procedures. Third, they assert that the wait staff normally did not do any actual work while waiting for their shifts to begin. Finally, Defendants argue in their reply that any work Ms. Maldonado performed was *de minimis*.

Defendants first contend that employees were not required to arrive 15 minutes early and that this requirement was loosely enforced. The Court finds this argument unconvincing. The FLSA requires an employer "to exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13. An employer "cannot sit back and accept the benefits without compensating for them." *Id.* Moreover, an employer's "'duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours.'" *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008)).

Defendants also argue that any off-the-clock work claims are limited to Plaintiffs' claims for improper tip pool procedures, seizing on an apparent typographical error in the amended complaint, which states, "[t]hese claims are specifically, but limited to, claims for owed wages due to improper tip pool procedures." Doc. 71 ¶ 80. The Court rejects this argument, finding that Defendants read the amended complaint too strictly. Because the amended complaint is governed by the Federal Rules of Civil Procedure, the Court reads it generously, especially with regard to apparent typographical errors. *See Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995); *Smith v. Niles Twp. High Sch. Dist. 219*, No. 03 C 2984, 2006 WL 1215217, at *2 (N.D. Ill. May 1, 2006) (disagreeing with the defendant's strict reading of the complaint in the context of summary judgment).

Defendants next assert that although some waitresses arrived early, many waitresses did not perform work in the time before their shifts began. Mrs. Golegos acknowledges that Ms. Maldonado sometimes worked before the start of her shifts, but she testified that 70–75% of the time Ms. Maldonado arrived prior to the start of her shift, she would sit and drink coffee rather than work. In response to other specific questions regarding whether Ms. Maldonado performed work off the clock, Mrs. Golegos testified by describing the work habits of Corfu's waitresses in general. The Court finds that Mrs. Golegos' testimony that Ms. Maldonado usually did not perform work prior to the beginning of her shift, coupled with the *de minimis* doctrine as described below, raise a genuine issue of material fact with regard to Plaintiffs' wage claims.

Finally, the Court turns to the question of whether Plaintiffs' off-the-clock work was *de minimis*. There are no rigid or mathematical rules outlining what amount of work qualifies as *de minimis*. *Frank v. Wilson & Co.*, 172 F.2d 712, 716 (7th Cir. 1949). Courts have held—especially in the context of donning and doffing uniforms or walking to a workstation—that approximately 10 minutes of pre-shift work may be *de minimis*. *Kellar*, 664 F.3d at 177 (citing *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984)). Whether a given amount of time is *de minimis* is a question of law. But the question cannot be resolved without analyzing the facts of the case. Courts consider four factors when determining whether an activity is *de minimis*: (1) the daily amount of time spent on the work, (2) the administrative difficulty of recording the time, (3) the size of the claim in the aggregate, and (4) the regularity of the work. *Farmer v. DirectSat USA, LLC*, No. 08 C 3962, 2010 WL 3927640, at *11 (N.D. Ill. Oct. 4, 2010).

The Court finds that if Plaintiffs actually performed 15–30 minutes of work at the start of each shift, their claim for that time would not be *de minimis*. Defendants' own cases only

support the notion that "unpaid activities lasting 10 minutes or less" are *de minimis*.  Doc. 134 at

13 (citing *Lindow*, 738 F.2d at 1062; *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d

509, 520 (E.D. Tex. 2005)).  The Court refrains from expanding the *de minimis* doctrine to

include a period of as much as 30 minutes.  Second, the Court finds that requiring Corfu to

accurately record its servers' time and to compensate them for their work would not create an

administrative burden on Defendants.  Third, Plaintiffs' claim in the aggregate could be

substantial.  As to the fourth factor, Plaintiffs assert, but Defendants dispute, that Plaintiffs

performed this work very regularly—at the start of each shift.

The facts before the Court do not reveal how often Plaintiffs arrived early, or how much

Plaintiffs actually worked prior to the start of their shift.  Therefore, like in *Dominguez*, the Court

denies Plaintiffs' motion for summary judgment on these claims.  Plaintiffs have not testified

with any specificity as to how often they arrived early or how much time they actually worked

on the days they arrived before the start of their shift.  Plaintiffs further do not testify that

Defendants maintained a policy of requiring them to record their shift start and end times in the

time log, rather Ms. Maldonado testified that when she initially logged her actual arrival time on

the time sheet, Mr. Golegos crossed it out and replaced it with the scheduled start time of her

shift.  Like plaintiffs in *Dominguez*, Plaintiffs apparently did not complain about this practice.

*Dominguez*, 790 F. Supp. 2d at 818.  Because these material facts are in dispute, the Court cannot

determine whether Plaintiffs' pre-shift work was *de minimis*.  Therefore, the Court denies

Plaintiffs' motion for summary judgment as to their off-the-clock work claims.

## CONCLUSION

The Court grants Defendants' motion for summary judgment [88] with regard to Ms.

Maldonado's Title VII claim—Count I of the amended complaint.  Any mistreatment Ms.

Maldonado suffered was motivated not by sexism, but by resentment in response to her failed engagement to Ari Golegos. The Court denies Defendants' motion for summary judgment as it relates to all other counts. The Court denies Plaintiffs' motion for summary judgment [118] in its entirety. The FLSA and IMWL claims are governed by disputed issues of material fact—including whether John Golegos or Teddy Mack stole Plaintiffs' tips or short-changed Plaintiffs on their tips, whether Defendants actually distributed pooled tips to busboys, and how much work Plaintiffs actually performed at Corfu without compensation. Because these facts are disputed and are material to Counts II and III, summary judgment is not warranted.

Dated: April 8, 2014

SARA L. ELLIS
United States District Judge